IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHARITY LYNN STEPHENS,**<br><br>  Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>  Defendant. | Case No. 3:24-CV-1516-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

  Plaintiff Charity Lynn Stephens ("Stephens") seeks judicial review of a final decision by the Commissioner of the Social Security Administration (the "SSA") denying her application for supplemental security income ("SSI"). Through her complaint (the "Complaint") (Doc. 1) and a supporting brief (Doc. 13), Stephens requests reversal of the final decision and remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). At issue is whether there is substantial evidence to support a determination by the Administrative Law Judge ("ALJ") as to Stephens's ability to perform any work available in the national economy for purposes of the fifth step of the five-step sequential disability evaluation. Stephens contends that the ALJ erred in identifying occupations that she could perform, insofar as they require a level of reasoning development that exceeded her residual functional capacity ("RFC").

  The Commissioner has filed a certified transcript of the underlying administrative record pursuant to sentence three of § 405(g) (Docs. 11 through 11-15) and a responding

brief (Doc. 18). Through the brief, the Commissioner requests that the ALJ's decision be affirmed. According to the Commissioner, at least one of the occupations identified by the ALJ, which existed in a significant number of jobs in the national economy, require a reasoning development level consistent with Stephens's RFC.

Stephens has not filed a reply to the Commissioner's responding brief within the allotted timeframe. This matter is now ripe for consideration.

For the reasons set forth below, the Complaint is denied, and the final decision of the Commissioner is affirmed.

## SOCIAL SECURITY FRAMEWORK

### A.    Sequential Disability Evaluation

"Social Security is a program whereby the federal government, through the [SSA], provides monetary benefits[,]" including disability insurance benefits and SSI, to eligible elderly, disabled, and other individuals. *United States v. Froehlich*, 2011 WL 13286700, at *1 (C.D. Cal. Feb. 25, 2011). To qualify for SSI based on disability, a claimant must be "disabled" as defined by Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* A person is disabled if they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

In determining whether a claimant is disabled and entitled to benefits, the SSA applies a five-step sequential process, inquiring whether: (i) the claimant is engaging in substantial gainful activity; (ii) the claimant has a severe impairment that significantly

limits their physical or mental ability to perform basic work activities; (iii) the claimant's impairment meets or exceeds an impairment listed in the appendix to the SSA regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1; (iv) the impairment prevents the claimant from performing past relevant work; and (v) the claimant cannot presently perform any other work. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving disability at steps one through four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, however, the burden shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.* To satisfy this burden, the SSA commonly relies on "vocational experts to provide 'an impartial assessment' of the (1) 'types of occupations in which [the claimant] can work' and (2) 'availability of positions in such occupations.'" *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (quoting *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011)). In formulating their assessment, vocational experts may "draw from various sources of occupational information[,]" including the Department of Labor's Dictionary of Occupational Titles (the "DOT"), which they "regularly canvass to identify job titles suitable for a claimant." *Chavez v. Berryhill*, 895 F.3d 962, 964-65 (7th Cir. 2018). The DOT assigns each occupation a specific title, a unique nine-digit code, and a description outlining the occupation's functional requirements, skill level, and typical duties. *See Dictionary of Occupational Titles, Parts of the Occupational Definition*, 1991 WL 645965 (4th ed., rev. 1991).

B.  **Review of Non-Disability Determinations**

A claimant may seek reconsideration of an initial determination of non-disability. *See* 42 U.S.C. § 1395ff(b)(1)(A). If the denial is affirmed on reconsideration, a claimant may request a hearing before an ALJ, who will issue a written decision regarding the claimant's ostensible disability. *See* 20 C.F.R. §§ 416.1429, 416.1453(a). A claimant may then request review of the ALJ's decision by the Social Security Appeals Council (the "Appeals Council"). *Id.* § 416.1467. If the Appeals Council denies a request for review or otherwise affirms an unfavorable decision by the ALJ, the claimant can seek judicial review in an appropriate federal district court. *See* 42 U.S.C. § 405(g); *see also id.* § 1395ff(b)(1)(A).

**ADMINISTRATIVE PROCEDURAL HISTORY**

On November 25, 2020, Stephens filed an application for SSI under Title XVI of the Social Security Act. (Doc. 11-3 at 35, 43). Through the application, Stephens claimed that she was disabled since July 1, 2020, due to a range of impairments, including attention deficit hyperactivity disorder or "ADHD," dyslexia, bipolar disorder, post-traumatic stress disorder or "PTSD," "dual personality," depression, "right knee problems," anxiety, sciatica, glaucoma, a learning disability, and chronic bronchitis. (*Id.* at 35).

On August 24, 2021, the SSA denied the application based on a determination that she was not disabled. (*Id.* at 43; Doc. 11-4 at 8-11). Stephens sought reconsideration of the denial. (Doc. 11-3 at 53; Doc. 11-4 at 12). On December 20, 2021, the SSA affirmed its initial decision. (Doc. 11-3 at 53; Doc. 11-4 at 16-17). Stephens then requested a hearing before an ALJ. (Doc. 11-4 at 18).

The hearing was held on July 27, 2022. (Doc. 11-2 at 33). Stephens was represented by a non-attorney advocate. (Doc. 11-4 at 63). During the hearing, Stephens testified about her ostensible disability and vocational factors including her age, education, and work experience. (Doc. 11-2 at 40-59). Teresa McClain, a vocational expert, testified regarding Stephens's ability to complete hypothetical tasks and perform related employment duties. (*Id.* at 59-64).

On August 9, 2022, the ALJ issued a decision unfavorable to Stephens, determining that Stephens was not disabled because she could perform work existing in significant numbers in the national economy. (Doc. 11-2 at 16-28). The ALJ identified three occupations that Stephens could perform: (i) produce weigher (DOT 299.587-010), with 1,253 positions available; (ii) cleaner and polisher (DOT 709.687-010), with 457 positions available; and (iii) agricultural produce sorter (DOT 529.687-186), with 4,816 positions available. (*Id.* at 27).

Stephens requested review by the Appeals Council. (Doc. 11-4 at 66-68). On November 1, 2022, the Appeals Council denied the request, stating that it "found no reason under [the] rules to review the [ALJ's] decision." (Doc. 11-2 at 2). As a result, the decision by the ALJ became the final decision of the Commissioner. (*Id.*).

On December 15, 2022, Stephens filed an action for judicial review of the 2022 decision in the United States District Court for the Southern District of Illinois, on grounds that the decision was not supported by substantial evidence. *Stephens v. Comm'r of Soc. Sec.*, Case No. 3:22-CV-2934-MAB, Doc. 1. Without any briefing identifying the specific findings that allegedly lacked support by substantial evidence, the parties jointly

moved to reverse and remand pursuant to sentence four of 42 U.S.C. § 405(g). *Id.*, Doc. 17. The joint motion did not delineate any particular issues to be addressed on remand. *See id.* On April 11, 2023, the reviewing court granted the joint motion and remanded the matter for further proceedings, or further fact-finding. *Id.*, Doc. 18.

Following the judicial remand, the Appeals Council vacated the 2022 decision on grounds that the ALJ's assessment of Stephens's RFC failed to reflect a sufficient evaluation of their findings, specifically, regarding Stephens's "capacity to deal with changes in a routine work setting if introduced gradually." (Doc. 11-10 at 47). The Appeals Council remanded Stephens's case to an ALJ. (*Id.* at 47-48). The case was assigned to the same ALJ who had issued the 2022 decision.

On March 26, 2024, the ALJ held a new hearing in Stephens's case. (Doc. 11-9 at 48-73). Stephens, who was represented by a non-attorney advocate, testified primarily as to her ostensible cognitive and psychological impairments. (*See id.* at 58-65). Thoms Grzesik, a vocational expert, testified as to Stephens's ability to perform hypothetical tasks and related occupational duties. (*Id.* at 66-72).

On March 26, 2024, the ALJ issued an adverse decision on the basis that Stephens was not disabled. (Doc. 11-9 at 5-20). Relevant to Stephens's claim, the ALJ determined that Stephens had the RFC to perform light work with certain restrictions and that she could perform work that existed in significant numbers in the national economy. (*Id.* at 11-20). The ALJ identified three occupations that Stephens could perform:

(i) housekeeping cleaner (DOT 323.687-014),[1] with 214,000 positions available; (ii) small product assembler (DOT 706.684-022), with 200,000 positions available; and (iii) collator operator (DOT 208.685-010), with 32,000 positions available. (*Id.* at 20).

On June 16, 2024, Stephens filed the Complaint in this action without pursuing further administrative steps.[2] (Doc. 1).

## EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. That said, given the nature of Stephens's claim (*see* Doc. 13 at 4-8)—which primarily implicates the ALJ's finding that "[Stephens] is limited to understanding, remembering, and carrying out [one- to two-step] instructions" (Doc. 11-9 at 17)—the following summary of the medical evidence is limited to conditions relating to Stephens's cognitive and mental functioning.

### A. Medical Evidence

The record includes documentation that, during her secondary education, Stephens was diagnosed with a learning disability, which was attributed to deficits in attention, auditory processing, and sensory-motor skills. (Doc. 11-14 at 8-11). Stephens has also reported on multiple occasions that, during her early schooling, she was

---

[1] The ALJ misidentified the DOT occupational code for housekeeping cleaner as "323.687-0104" (Doc. 11-9 at 20), a clerical error that appears to have contributed to a key misunderstanding in Stephens's argument—specifically, a confusion between housekeeping cleaner (DOT 323.687.014) and hospital cleaner (DOT 323.687.010). (*See* Doc. 13 at 7). Nevertheless, the record clearly reflects that the ALJ intended to identify housekeeping cleaner.

[2] Judicial review of an ALJ's decision issued on judicial remand may be sought without further administrative review by the Appeals Council. *See* 20. C.F.R. § 416.1484(a), (d); 42 U.S.C. 405(g); *see also McDonald v. Berryhill*, 754 F. App'x 465, 467 (7th Cir. 2019).

diagnosed with dyslexia (Doc. 11-7 at 35, 57, 62, 166; Doc. 11-8 at 220, 254, 288, 322; Doc. 11-14 at 9), which is ostensibly distinct from her documented learning disability (Doc. 11-7 at 166). The record, however, does not contain a formal diagnosis of dyslexia or any supporting documentation.

As of July 1, 2020, the alleged onset date of her disability, Stephens had been formally diagnosed with depression (Doc. 11-7 at 24) and was also reporting psychiatric problems such as anxiety, bipolar disorder, borderline personality disorder, dissociative identity disorder, and PTSD (*see, e.g.*, Doc. 11-7 at 22, 24, 67-70, 225-27; Doc. 11-8 at 173-75).

On October 8, 2020, Stephens was diagnosed with anxiety and borderline personality disorder. (Doc. 11-7 at 46). She also reported having been diagnosed with ADHD by psychiatrist Rakesh Chandra and that she was prescribed medication for the condition. (*Id.*). She stated that, although ADHD was "having an impact on" her, she was "doing a lot better" because the medication was working well. (*Id.*). The self-reported diagnosis of ADHD—also known as attention deficit disorder or "ADD"—is consistent with subsequent treatment notes (*see, e.g.*, Doc. 11-8 at 148, 331, 365), as well as a treating source statement dated June 8, 2023 (Doc. 11-14 at 14, 168). Treatment notes reflect that the prescribed medication Vyvanse was generally effective in managing Stephens's ADHD symptoms, particularly with respect to her ability to focus. (*See* Doc. 11-8 at 131, 135, 138, 140, 146, 154, 157, 275, 349, 359; Doc. 11-14 at 20, 37, 41, 46, 60, 79). Notably, she reported that her medication enabled her to engage in activities she had previously been unable to, such as reading a book and watching a movie. (Doc. 11-8 at 275).

Treatment notes dated March 4, 2021, indicate that Stephens had been diagnosed with mild bipolar disorder and was receiving medication treatment. (Doc. 11-8 at 165). They also show that Stephens: was alert, oriented, cognitively intact, and cooperative; demonstrated good judgment and insight; displayed a full range of mood/affect without visual hallucinations or speech difficulties; and exhibited normal thought content and a logical, goal-oriented thought process. (*Id.*).

On April 1, 2021, Stephens reported having experienced a panic attack in the previous month and acknowledged having "dark thoughts but [was] not act[ing] on them." (*Id.* at 159). Nonetheless, she stated that she was generally doing well and noted improvements in her ability to focus. (*Id.*). Mental status examinations from subsequent visits in 2021 similarly reflected normal cognitive and mental functioning, and Stephens continued to report that she was doing well overall—she had a normal appetite, was sleeping well, and was not experiencing any suicidal or homicidal ideations. (*See id.* at 131, 135, 138, 141, 146, 150, 154, 305). Notably, on September 2, 2021, Stephens reported that, notwithstanding frequent panic attacks, her anxiety level was three and her depression level one, on a scale of one to ten. (*Id.* at 305). She further reported that she was able to cope with stress by listening to music or sports on the radio. (*Id.*).

On August 11, 2021, state agency psychology consultant Jonathan Thomas-Stagg diagnosed Stephens with ADHD, a learning disability, bipolar disorder, and PTSD, based on his review of medical records dated October 8, 2020. (Doc. 11-7 at 166-70).

On February 7, 2022, Stephens was diagnosed with dissociative identity disorder—formerly known as multiple personality disorder—and PTSD. (Doc. 11-8 at

179). She reported that she was doing well overall, and a mental status examination reflected normal cognitive and mental functioning. (*Id.*). During subsequent visits in 2022, Stephens continued to report overall well-being (*see id.* at 329, 333, 337, 341, 345, 349, 353, 356; Doc. 11-14 at 99, 103, 110, 113, 121, 124, 129, 137, 141), and her mental status examinations consistently reflected normal cognitive and mental functioning (Doc. 11-8 at 331, 335, 339, 343, 347, 351, 355, 358; Doc. 11-14 at 101, 105, 112, 116, 123, 127, 132, 136, 139, 142-43).

On January 5, 2023, Stephens reported experiencing sleep difficulties and a flare-up of PTSD symptoms, including nightmares, following an altercation with employees at a local Walmart. (Doc. 11-14 at 83). On March 16, 2023, she reported experiencing mood instability. (*Id.* at 72). By April 13, 2023, she indicated that her mood had stabilized. (*Id.* at 65). However, during visits from May through August 2023, Stephens again reported mood instability, which she attributed to relationship difficulties with her daughter. (*Id.* at 29, 33, 37, 60). On November 16, 2023, she reported feeling overwhelmed and stressed due to property damage caused by ants. (*Id.* at 20). Nevertheless, mental status examinations conducted from January 2023 through February 2024 consistently reflected normal cognitive and mental functioning. (*Id.* at 23, 31, 35, 39, 43, 47, 49, 54, 62, 67, 74, 81, 86; Doc. 11-15 at 24, 28-29).

**B.     Hearing Testimony**

At the disability hearing held upon judicial remand, Stephens testified regarding her medical conditions, functional limitations, and work history. (Doc. 11-9 at 55-66).

Stephens testified that she could not work because she did not "get along with people[,]" was "afraid of people and going outside[,]" and could not "regulate her emotions." (*Id.* at 58). When asked whether her medical providers had discussed any treatment options to address those issues, Stephens responded, "No." (*Id.* at 58). Elaborating on her mental health symptoms, Stephens stated that seemingly trivial stimuli—such as "a smell, a word, [or] the way somebody laughs"—could induce anxiety or panic attacks, provoke anger outbursts, or otherwise trigger PTSD symptoms such as flashbacks and nightmares. (*See id.* at 61-64). For instance, she described altercations with employees at a local Walmart who followed and monitored her while she shopped. (*Id.* at 62-63). She also recounted an altercation with a neighbor that resulted in law enforcement intervening and temporarily removing her daughter from the premises. (*Id.* at 63-64). Stephens further stated that, due to the symptoms of her bipolar disorder, she would remain in bed for most of the day, refrain from showering, and avoid going outside for weeks at a time. (*Id.* at 64). When she did go outside, she carried a knife and was accompanied by someone else. (*Id.* at 59). She also stated that she did not respond well to taking orders from others. (*Id.* at 65).

As to her cognitive impairments, Stephens testified that she had attempted to earn a high school equivalency diploma or "GED," but was unable to "keep up with the curriculum" because she could not read or understand the material. (*Id.* at 57; *see also id.* at 65). She further testified that, for similar reasons, she had not received any vocational training. (*Id.* at 57).

On the matter of her work history, Stephens testified that she last worked in 2011 as a trailer cleaner. (*Id.* at 57-58).

Thomas Grzesik, the vocational expert, also testified at the hearing. (*Id.* at 66-71). He identified three occupations at the light exertional level that an individual with Stephens's vocational skills could perform—assuming that they could: (i) understand, remember, and carry out one- to two-step instructions; (ii) work in a setting requiring no more than occasional, brief interaction with coworkers and supervisors for the purpose of performing simple tasks and no interaction with the general public; (iii) respond appropriately to simple changes in a routine work setting if introduced gradually; and (iv) set realistic goals and make plans independently of others for the purpose of performing simple tasks. (*Id.* at 68-69). These occupations and positions were as follows: (i) housekeeping cleaner (DOT 323.687-014), with 214,000 positions available; (ii) small product assembler (DOT 706.684-022), with 200,000 positions available; and (iii) collator operator (DOT 208.685-010), with 32,000 positions available. (*Id.* at 68). Lastly, Grzesik testified that his testimony was consistent with the DOT. (*Id.* at 69).

## DECISION OF THE ALJ

In applying the first step of the sequential process described above, the ALJ determined that Stephens had not engaged in substantial gainful activity during the relevant period, thereby satisfying the insured status requirements of the SSA. (Doc. 11-9 at 7).

At step two, the ALJ determined that Stephens suffered from severe impairments, including "osteoarthritis of the right knee status-post replacement, chronic bronchitis,

obesity, degenerative disc disease, [a] sacroiliac degenerative change, [a] learning disorder, anxiety, [PTSD], bipolar disorder, dissociative amnesia, [ADHD], and [a] personality disorder." (*Id.* at 7-8).

Moving to step three, the ALJ determined that Stephens's impairments did not meet or exceed the severity of those listed in the applicable appendix to the SSA regulations. (*Id.* at 8-11). In addressing Stephens's mental and cognitive impairments, the ALJ determined that "[t]he severity of [Stephens's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.03, 12.04, 12.06, 12.08, 12.11, and 12.15" in the appendix to the SSA regulations. (*Id.* at 9). According to the ALJ, Stephens had a moderate limitation in: (i) understanding, remembering, or applying information; (ii) interaction with others; (iii) concentrating, persisting, or maintain pace; and (iv) adapting or managing herself. (*Id.*).

As to her ability to understand, remember, or apply information, the ALJ acknowledged that Stephens "had difficulty with memory, understanding, and following instructions" but also noted that she "could prepare simple meals using an air fryer, do laundry, drive, and shop in stores[.]" (*Id.* at 9-10). Regarding Stephens's testimony that she "could not read and could not learn needed information to pass a GED[,]" the ALJ determined that her claim was not supported by objective medical evidence, noting that she "was able to read a book and watch TV" with the help of her medication. (*Id.*). The ALJ further observed that Stephens "had intact cognitive function[,]" although her "thinking was sluggish and seemed impoverished at times[.]" (*Id.*). The ALJ determined that Stephens's "reports of anxiety and panic attacks could reasonably limit her ability to

understand, remember, or applying information." (*Id.*).

With respect to her ability to interact with others, the ALJ noted that, although Stephens had a fear of "leav[ing] the house alone" and exhibited "some paranoia that could limit her ability to interact with others[,]" she nevertheless went on dates and "was able to interact with family and shop in stores[.]" (*Id.*). The ALJ also noted that Stephens had "fairly normal mental status examination findings[.]" (*Id.*). The ALJ determined that Stephens's testimony and the medical evidence "supported moderate limitations in this area [of] functioning." (*Id.*).

In terms of her ability to concentrate, persist, or maintain pace, the ALJ noted that Stephens could not "remember three words after a distracting task" or "perform serial seven task" and that "she had difficulty with multiplication." (*Id.*). At the same time, the ALJ acknowledged that Stephens "could drive, prepare simple meals, do laundry, care for children, and shop in stores[,]" and that she "had some improvement in with her ability to focus and concentrate with medication[.]" (*Id.*). The ALJ determined that "the overall record[] supports moderate limitation in this area of mental functioning." (*Id.*).

Concerning her ability to adapt or manage herself, the ALJ noted that Stephens had difficulties leaving the house alone, regulating her emotions, traveling outside of her town, keeping track of personal affairs, and handing stress and changes in routine. (*Id.*). The ALJ determined that the record "support[ed] a reasonable inference that [Stephens] ha[d] a moderate limitation in her ability to regulate her emotions, control her behavior, and maintain well-being in a work setting." (*Id.*).

Based on the severity determinations, the ALJ determined that Stephens had the

RFC to perform light work as defined in 20 C.F.R. § 416.967(b), subject to the following exceptions or limitations: (i) climbing ramps and stairs was limited to an occasional level; (ii) balancing, stooping, kneeling, crouching, and crawling were limited to an occasional level; (iii) climbing ladders, ropes, or scaffolds was precluded entirely; (iv) concentrated exposure to extreme weather, respiratory irritants, and workplace hazards was to be avoided; (v) understanding, remembering, and carrying out task instructions was limited to one- to two-step instructions on a sustained basis; (vi) interaction with coworkers and supervisors was limited to brief, occasional contact; and (vii) changes in a routine work setting were limited to those that were simple and introduced gradually. (*Id.* at 24).

For reference, "light work" refers to work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). An individual is "capable of performing a full or wide range of light work" if they can "substantially" perform all associated activities. *Id.* Also, unless there are further limiting factors, an individual capable of light work is also cable of sedentary work. *Id.* A task is deemed "occasional" when performed no more than one-third of an eight-hour workday. SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).

In determining that Stephens could perform such light work, the ALJ considered Stephens's medical records, the opinion of the state agency psychology consultant, and the hearing testimony—all of which are summarized above. (*See* Doc. 11-9 at 7-19).

Moving to step four, the ALJ determined that Stephens did not have any past relevant work. (*Id.* at 19).

At step five, the ALJ assessed Stephens's ability to perform any work existing in

the national economy. (*Id.* at 19-20). In doing so, the ALJ considered Stephens's RFC in conjunction with her age, education, and lack of relevant work experience. (*Id.* at 19). Stephens was classified as a "younger individual" at the time she filed her application, but she subsequently transitioned into the "closely approaching advanced age" category during the adjudicatory period, as defined in 20 C.F.R. § 416.963. (*Id.*). As to education, the ALJ found that Stephens had a limited education, as defined in 20 C.F.R. § 416.964. (*Id.*). Most notably, the ALJ determined that, based chiefly on the vocational expert testimony, Stephens could perform the unskilled occupations of housekeeping cleaner, small product assembler, and collator operator, which existed in approximately 214,000, 200,000, and 32,000 positions in the national economy, respectively. (*Id.* at 20).

Accordingly, the ALJ concluded that Stephens was not disabled and denied her application for SSI. (*Id.* at 20).

## STANDARD OF REVIEW

A reviewing court has authority under 42 U.S.C. § 405(g) to remand a social security case to the Commissioner for further administrative proceedings. *See Melkonyan v. Sullivan*, 501 U.S. 89, 101-02 (1991). This authority is limited to the mechanisms provided in sentence four or sentence six of section 405(g). *Id.* The fourth sentence of section 405(g), which is relevant here, authorizes a court to issue a remand order upon the pleadings and transcript of the record, either affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). A sentence-four remand is appropriate when the evidence on the record is insufficient to support the Commissioner's final decision and further fact-finding is necessary. *See Kleja v. Barnhart*, 220 F. Supp. 2d 1330,

1334-35 (M.D. Fla.), *aff'd*, 49 F. App'x 290 (11th Cir. 2002). Essentially, a sentence four remand is a determination that the SSA erred in deciding to deny benefits. *Hoa Hong Van v. Barnhart*, 483 F.3d 600, 605 (9th Cir. 2007).

Judicial review of a final decision by the Commissioner under 42 U.S.C. § 405(g) is limited to two inquiries: (i) whether the Commissioner correctly applied the relevant legal standards; and (ii) whether the decision is supported by substantial evidence. *Matthew S. v. Kijakazi*, 2024 WL 5440828, at *3 (C.D. Ill. Nov. 27, 2024) (citing *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011)). Evidence is substantial where it is more than a scintilla but less than a preponderance, such that a reasonable mind could accept it as adequate to support a conclusion. *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)) (quotations omitted). In reviewing for substantial evidence, the entire administrative record is taken into consideration, but the reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination[.]" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). When an ALJ ignores an entire line of evidence contrary to the ruling, however, it makes it impossible for a district court to assess whether the ruling rested on substantial evidence. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). Ignoring evidence in this way requires the district court to remand to the agency. *Golembiewski*, 322 F.3d at 917.

## DISCUSSION

Stephens contends that the ALJ erred in identifying occupations she could perform—specifically, housekeeping cleaner (DOT 323.687-014), small product assembler (DOT 706.684-022), and collator operator (DOT 208.685-010)—on grounds that each occupation requires a reasoning development level of two under the DOT, which is inconsistent with her functional limitation to understanding, remembering, and carrying out one- to two-step instructions. (Doc. 13 at 1, 4-8; *see also* Doc. 11-9 at 17). According to Stephens, this limitation restricts her to occupations requiring a reasoning development level of one and is categorically incompatible with occupations requiring a reasoning development level of two or higher. (*Id.* at 5-6).

For reference, each occupation listed in the DOT is assigned a reasoning development level, which reflects the reasoning capacity required "for satisfactory job performance." *See Dictionary of Occupational Titles*, app. C, 1991 WL 688702. The reasoning development scale ranges from level one, which involves the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions[,]" to level six, which entails "[applying] principles of logical or scientific thinking to a wide range of intellectual and practical problems." *Id.*

Stephens's argument is without merit. The fundamental flaw in her position lies in its factual premise that "each of the [occupations] at issue [is a] Reasoning Level 2 [occupation]." (Doc. 13 at 6 (emphasis removed)). Indeed, two of the occupations identified—small products assembler and collator operator—are classified at reasoning development level two. *Dictionary of Occupational Titles*, 706.684-022 Assembler, Small

*Products I*, 1991 WL 679050; *id.*, *208.685-010 Collator Operator*, 1991 WL 671753. By contrast, the remaining occupation—housekeeping cleaner—is classified at reasoning development level one. *Id.*, *323.687-014 Cleaner, Housekeeping*, 1991 WL 672783.

Stephens erroneously refers to the occupational description for hospital cleaner (DOT 323.687-010)—which is a distinct occupation classified at reasoning development level two—in discussing the requirements of housekeeping cleaner. (*See* Doc. 13 at 6-7, 6 n.5). This confusion appears to stem from a clerical error in the ALJ's written decision, which misidentified the DOT occupational code for housekeeping cleaner as "323.687-0104" rather than the correct code, "323.687-014." (Doc. 11-9 at 20). The record makes clear, however, that the occupation identified was housekeeping cleaner, not hospital cleaner. The ALJ relied on the vocational expert's testimony in identifying the occupations at issue (*see id.*), and the vocational expert unambiguously cited the DOT code for housekeeping cleaner as "323.687-014" (*id.* at 68). A clerical error of this nature does not warrant remand, *see McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011), and Stephens does not otherwise dispute that occupations classified at reasoning development level one, such as housekeeping cleaner, are consistent with her RFC.

The analysis thus turns to whether the occupation of housekeeping cleaner, which accounted for approximately 214,000 positions in the national economy, constituted "work which exist[ed] in significant numbers in the national economy" within the meaning of 20 C.F.R. § 416.966. Indeed, a review of relevant case law confirms that courts have consistently held similar or even lower job numbers to constitute "significant numbers" for purposes of step five. *See Weatherbee*, 649 F.3d at 572 ("[I]n the context of

step five of [the] disability benefits analysis, 'it appears well-established that 1,000 jobs' constitutes a significant number.'") (quoting *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009)). The Commissioner's burden at step five was satisfied through the ALJ's identification of housekeeping cleaner—an occupation consistent with the assessed limitation—as work existing in significant numbers in the national economy.[3]

Accordingly, judicial remand is not warranted insofar as the ALJ's step five determination is supported by substantial evidence and no other grounds for remand have been shown.

## CONCLUSION

For these reasons, the Complaint (Doc. 1) filed by Plaintiff Charity Lynn Stephens is **DENIED**, and the final decision of the Commissioner of Social Security denying Stephens's application for supplemental security income is **AFFIRMED**. This action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Commissioner of Social Security.

**IT IS SO ORDERED.**

**DATED:  June 2, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

---

[3] The Court, therefore, need not reach the broader question of whether occupations classified at reasoning development level two are categorically incompatible with a functional limitation to one- to two-step instructions.